OPINION OF THE COURT
Howard Berler, J.
This is a proceeding for the appointment of a guardian for Marion A. Williams pursuant to article 81 of the Mental *794 Hygiene Law. With the consent of Ms. Williams, a temporary guardian has been appointed by an order dated May 23, 2002. At the time the proceeding was commenced Marion A. Williams was a patient at Nesconset Nursing Center. In giving her consent to the appointment of a guardian, Ms. Williams sought assurance that she would be able to return home. The temporary guardian, Douglas K. McNally, Esq., was given the power “[t]o assist the social work department at Nesconset Nursing Center in planning for the safe discharge of the person allegedly in need of a guardian and identifying appropriate outpatient treatment and services, specifically, to execute any and all documents and secure all services necessary and appropriate to discharge marión a. williams to her home, with all necessary home health aide and/or other services * * * .”
Subsequently, Mr. McNally determined that a safe return home for Marion A. Williams was not possible. This conclusion was based on the existence of an intense conflict between her niece, Sandra Woy, and her grandniece Dale Leyden on one side and her grandniece, Dawn Erato, on the other side. Mr. McNally observed that the grandnieces continually drew Ms. Williams into their dispute leaving her upset and agitated. Accordingly, Mr. McNally arranged for the placement of Ms. Williams at Sunrise Assisted Living where she is now residing, and he seeks the court’s ratification of his action in this regard. Mr. McNally’s decision is supported by Sandra Woy and Dale Leyden, and opposed by Dawn Erato.
The court received the testimony of Gerald M. Lutzer, M.D., a psychiatrist who was asked by Mr. McNally to examine Ms. Williams, and to thereupon render an opinion as to the appropriate placement of Marion Williams. In addition, on January 23, 2003 the court, with counsel for the various parties, visited Marion A. Williams at Sunrise Assisted Living at which time the court and counsel asked her questions about her current living conditions and her preferences.
The essential issue now before the court involves the appropriate place of abode for Marion A. Williams. While the temporary guardian, Douglas K. McNally, Esq., has determined that it is not safe or appropriate for Ms. Williams to return to her residence in West Hempstead, Ms. Williams has expressed a strong preference for returning to her home with the assistance of such aides as might be required.
Mental Hygiene Law § 81.02 (c) (3) directs the court, in making its determination to appoint a guardian to assess, inter *795 alia, the person’s “preferences, wishes, and values with regard to managing the activities of daily living.” Mental Hygiene Law § 81.20 (a) (7) directs that: “a guardian who is given authority relating to the personal needs of the incapacitated person shall afford the incapacitated person the greatest amount of independence and self-determination with respect to personal needs in light of that person’s functional level, understanding and appreciation of that person’s functional limitations, and personal wishes, preferences and desires with regard to managing the activities of daily living.” Particularly, with respect to the power, imparted to a guardian to choose the place of abode for an incapacitated person, Mental Hygiene Law § 81.22 (a) (9) directs: “the choice of abode must be consistent with the findings under section 81.15 of this article, the existence of and availability of family, friends and social services in the community, the care, comfort and maintenance, and where appropriate, rehabilitation of the incapacitated person, the needs of those with whom the incapacitated person resides; placement of the incapacitated person in a nursing home or residential care facility as those terms are defined in section two thousand eight hundred one of the public health law, or other similar facility shall not be authorized without the consent of the incapacitated person so long as it is reasonable under the circumstances to maintain the incapacitated person in the community, preferably in the home of the incapacitated person” (italics added; see, Matter of Linden-Rath, 188 Misc 2d 537 [Sup Ct, NY County 2001]). Although the record does not allow a firm conclusion as to whether Sunrise Assisted Living is a “residential health care facility” as defined in Public Health Law § 2801 (3), for purposes of Mental Hygiene Law § 81.22 (a) (9) it should be deemed at least a “similar facility” since placement there involves having Marion A. Williams reside in an institutional setting, removed from the community. It would deprive her of the privacy and comfort provided by her own home.
The clear statutory mandate that Marion A. Williams’ preferences, wishes and desires should be given great weight has not evaded the court’s attention. However, neither has the instruction to consider such wishes, preferences and desires in light of Ms. Williams’ functional level, understanding and appreciation of her functional level. The key issue is whether it is reasonable under the circumstances to maintain Marion A. Williams at her home.
It has been convincingly argued to the court that Ms. Williams expressed desire to return to her West Hempstead resi *796 dence is a desire to return to the happy home and memories associated with it. But, the home she remembers no longer exists. Her husband, twin sister and brother-in-law have died. She would not be returning to any family, except for visitors.
In order for the court to make a determination, it is confronted with the dilemma of balancing Ms. Williams’ preference, which is favored by law (Mental Hygiene Law § 81.22 [a] [9]), against placement in a facility contrary to such preference.
The court finds that in applying the balancing test, the conclusion is overwhelmingly in favor of placement at Sunrise Assisted Living.
1. Psychiatrist’s Recommendation
In his January 22, 2003 testimony Dr. Lutzer testified that Marion A. Williams suffers from mild to moderate dementia. He expressed the view that, from a medical perspective, given Ms. Williams’ level of dementia, Sunrise Assisted Living constituted preferable residence as it provides appropriate supervision and care. He indicated she would be safer at Sunrise Assisted Living and provided with suitable activities there that would not be available to her at home.
Nothing in the record before the court suggests that Dr. Lutzer’s findings and recommendations were based on anything but his fair, neutral and independent analysis. The court finds his testimony credible and entitled to significant weight.
2. The Jeopardy Confronting Marion A. Williams as a Result of the Conflict, Altercation and Burdening Influence of Family Members
The family members with whom Marion A. Williams has most contact are her grandnieces, Dale Leyden and Dawn Erato, whose conflict is noted above. The guardian has indicated, as is also noted above, and the record supports his assertions, that there is great discord between the grandnieces and that when visiting Marion A. Williams they have raised issues in dispute between themselves that have been upsetting to Marion A. Williams and detrimental to her well-being.
3. The Recommendation of the Temporary Guardian, Which is Entitled to Great Probative Value
There is nothing before the court even remotely to suggest that Douglas K. McNally, Esq. is motivated by anything other than the promotion of Marion A. Williams’ best interests. He has been adamant in his view throughout this proceeding that the family conflict between Ms. Williams’ grandnieces makes her return home to West Hempstead, where their access and *797 influence of the battling family members will be far more pronounced than in the current setting, unsuitable for Marion Williams. In Mr. McNally’s neutral view, it is not reasonable to allow Marion A. Williams to return to live in her West Hemp-stead residence.
4. The Recommendations of the Niece Sandra Woy and Grandniece Dale Leyden
As noted, these two family members are in full accord with the recommendation of the temporary guardian.
5. Marion A, Williams’ Assessment of the Sunrise Assisted Living Facilities
Marion A. Williams has expressed the view that she is happy at Sunrise Assisted Living. She described the facility as “very lovely.” She stated, “It’s very beautiful here and everyone here I have ever met was very nice to me.” She has made friends there. She has dining companions. She enjoys the activities that are made available to her.
Also, the court’s attention was directed to testimony given by Marion A. Williams at a prior hearing at which time she expressed her desire to remain at Nesconset Nursing Center and not return home. Thus, although firmly expressed, it appears that there is some equivocation in Marion A. Williams’ actual desires.
Further, the services, companionship and stimulation* provided at Sunrise Assisted Living cannot be duplicated, or even approached, at her private residence. She has peace of mind and the disruptive influences of her feuding relatives can be far more readily controlled if she remains at Sunrise Assisted Living. It simply is not reasonable to have Marion A. Williams returned to her home under the circumstances of this case.
The court emphatically rejects the briefly discussed alternative of having Ms. Williams reside with her grandniece Dawn Erato and her husband. To have Ms. Williams reside with the protagonists on one side of the vitriolic feud, of which Marion A. Williams seeks no part, cannot be in her best interests. Nor *798 is there any evidence that it would be feasible, or even possible, for her to reside with her friend Phil Halpin, as Ms. Williams fleetingly suggested.
The court is fully aware of, and sensitive to, the fact that neither it nor a guardian should be empowered to substitute their judgment for that of a person for whom a guardian has been appointed merely because they believe that the decision of such person is not the best one. This is not the case here. Medical testimony establishes that Marion A. Williams suffers from dementia. Her expressed preference is not simply undesirable, it is not rational and abundantly contrary to her best interests.
Accordingly, it is ordered that the temporary guardian is empowered to choose Marion A. Williams’ place of abode, specifically including the power to maintain and continue her current residence in Sunrise Assisted Living.

 Marion A. Williams stated on the record, when asked if she ever got to leave the facility: “I go on the bus trips, most of them I go on. * * * And I go to the movies. We went to a ball game and an airport. We go all over. They go all over, this place does it. It’s a lovely place. You couldn’t have found more things to do than this place. And I seem to be making a lot of friends too that like me. And I like them. But especially, I have some favorites, like Catherine. I like her because she likes to talk about things I like to talk about. They are lovely people.”